UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:00-CV-11145-RGS

WALTER J. BERIONT

v.

GTE LABORATORIES, INC.,
GTE SERVICE CORPORATION,
GTE COMMUNICATIONS CORPORATION,
and ALFRED H. BELLOWS

MEMORANDUM AND ORDER
DECLARING THE PARTIES' RIGHTS AND OBLIGATIONS
UNDER THE PRIOR SETTLEMENT AGREEMENT

June 27, 2012

STEARNS, D.J.

Plaintiff Walter J. Beriont was employed by defendant GTE Laboratories, Inc. (GTE Labs), as an engineer. In February of 1996, Beriont conceived of a simple invention that improves low frequency power distribution within a cable television network. Beriont disclosed the invention and its embodiment to co-worker defendant Alfred Bellows in the summer of 1996. In August of 1996, Beriont and Bellows informed defendant GTE Service Corporation (GTE Service) of the invention.

Also in the summer of 1996, Beriont was accused by a co-worker of "stealing" laboratory equipment (allegedly taking the equipment from one GTE lab to another).

The accusation prompted Beriont to file a defamation lawsuit against the co-worker.[1] GTE Labs terminated Beriont in March of 1997. Thereafter, Beriont amended his Complaint to include claims against GTE Labs for breach of contract, wrongful termination, and promissory estoppel. The Massachusetts Appeals Court eventually sided with Beriont on the wrongful termination claim concluding that "it is undisputed that GTE Labs fired Beriont [in March of 1997] for failing to end his litigation against the company." *Beriont v. Reichlen*, 60 Mass. App. Ct. 1108, 2003 WL 22992122, at *3 (Mass. App. Ct., Dec. 19. 2003).

Notwithstanding the turmoil caused by the ongoing litigation, on June 11, 1998, with the assistance of Floyd Anderson, a patent attorney engaged by GTE Service, Beriont and Bellows jointly filed U.S. Patent Application No. 09/095,111 as co-inventors.[2] Beriont claims that on August 5, 1998, GTE Service asked Beriont to sell and assign his invention to GTE Labs, and to give a power of attorney to GTE Service

---

[1] In February of 1996, Bruce Reichlen, a GTE Labs department manager accused Beriont of being "dishonest," a "liar," and a "thief," both to Beriont's face and to another GTE Labs' employee. Beriont complained about these comments to his then supervisors and to GTE Labs' Human Resources Department. GTE undertook an investigation into the incidents. In September of 1996, Beriont filed suit against Reichlin on claims of defamation and intentional interference with contractual relations.

[2] Beriont alleges that at no time during the preparation and prosecution of the patent application did GTE Service discuss with him ownership rights in the invention.

over the invention. According to Beriont, after Anderson assured him that the GTE attorneys "were obligated to represent the inventors and therefore [he] would not need another lawyer," he acquiesced and signed it. On February 19, 1999, Attorney Leonard Suchyta filed an assignment application with the PTO on GTE Labs' behalf. On July 6, 1999, the PTO granted Application No. 09/095,111, and issued U.S. Patent No. 05,920,802 (the '802 patent) to Beriont and Bellows as co-inventors, and GTE Labs as assignee. On November 3, 1999, and again on March 6, 2000, Beriont wrote to GTE Service raising questions about the patent and the assignment without receiving a response. On May 3, 2000, Beriont notified GTE Service that he was rescinding the August 1998 power of attorney.

Beriont filed this action on June 13, 2000, seeking a declaratory judgment that he is the sole inventor of the '802 patent; to correct the patent's registration to remove Bellows as the co-inventor and GTE Labs as the assignee; for breach of fiduciary duty against GTE Service; and for patent infringement against GTE Labs and GTE Communications Corporation (GTE Commc'ns) (a/k/a Media Ventures).

The parties were embroiled in two cases filed in the Massachusetts Superior Court. In September of 1996, Beriont filed the previously described defamation case against a co-worker Bruce Reichlen *(Beriont v. Reichlen*, Middlesex Superior Court, CV-1996-5472). Beriont, upon losing his job, added claims against GTE Labs in

December of 1997. The second lawsuit, a declaratory judgment action, was filed by GTE Labs against Beriont in June of 1999. On June 13, 2005, the day trial was to commence in the defamation case, the parties reported it "settled." A dismissal nisi was entered by Justice Neel in the defamation case the same day, and in the GTE Lab declaratory judgment case two days later, on June 15, 2005. The court allowed the parties' jointly-filed motion to extend the time of entry of the dismissal nisi until August 15, 2005. On the appointed day, Beriont filed an emergency motion to vacate the dismissal as the formal settlement agreement had yet to be executed. On February 6, 2006, Justice Neel entered a final judgment of dismissal directing the parties to *Correia v. DeSimone*, 34 Mass. App. Ct. 601 (1993), should either side seek specific performance of the settlement terms presented to the court. The parties, however, failed to execute a formal settlement agreement.

After Beriont made service on defendants in this case, the parties asked the court (then Judge Lasker), to stay the federal litigation in light of the ongoing attempts to memorialize the state court settlement. Judge Lasker issued the requested stay on September 7, 2000. On February 1, 2007, Beriont asked the court to lift the stay and permit him to proceed to litigate the federal claims. Judge Lasker denied the motion, ruling that "in view of the apparent dispute between the parties as to the settlement in or not of the State Court action makes it inappropriate to lift the stay in this Court."

Feb. 20, 2007 Order. The case was transferred to this session on April 6, 2010, and on August 25, 2010, the court issued an Order to Show Cause as to whether the stay should remain in place. The court continued the stay until July 14, 2011, when it issued a dispositive motion schedule.

On September 7, 2011, defendants moved to dismiss Beriont's Complaint with prejudice contending that the issues underlying this dispute were settled on the record before Judge Neel in the Massachusetts Superior Court in 2005. Defendants asserted that the settlement included, among other things, an agreement by Beriont to dismiss this action. Moreover, defendants argued that the settlement of the state court cases resolved the issues underlying the federal action, and thus acts as a bar under the doctrines of res judicata and collateral estoppel. In support of the motion, defendants submitted a transcript of the parties' lobby conference with Judge Neel reporting the settlement of the litigation. Defendants also attached the Superior Court dockets for both cases; an unsigned draft of the settlement agreement; draft releases for each of the parties; and unexecuted stipulations of dismissal.

In response, Beriont argued that he had agreed only to GTE Labs' (now known as Verizon Laboratories, Inc.) proposal to settle the Superior Court Civil Action No. 98-5418, on condition that GTE Labs acknowledge in writing that the defamatory allegations made against him were false, that GTE Labs pay him $50,000, and that the

5

terms of the settlement agreement be held in confidence. In return, Beriont acknowledges his agreement to dismiss his lawsuit against GTE Labs and Reichlen, and to enter into an agreement of joint ownership of Patent No. 05,920,802,[3] although "he has not given up his right to hold all defendants accountable for taking his patent rights from him." Pl. Opp'n Mem. at 5. Beriont argues that Judge Lasker's refusal to lift the stay led him to believe that the federal court would not entertain his patent claims until the state court proceedings had been completed.

On October 21, 2011, this court denied the motion to dismiss, finding that defendants had not met their burden of proving the existence of a "global settlement agreement." *See* 10/21/11 Order. In denying a renewed motion by defendants for summary judgment, filed on November 18, 2011, the court held that "a dispute of fact remains as to whether an enforceable settlement agreement between the parties exists that includes retroactive assignment to GTE of Beriont's rights in the Jumper ['802] patent." *See* 2/1/12 Order. Accordingly, the court set that limited issue for trial.

In preparation for trial, the parties filed affidavits setting out their respective

---

[3] A reading of the transcript confirms that Verizon agreed to pay Beriont $50,000, and that it would obtain a release from Reichlin without revealing the terms of the settlement. Arthur Telegen, Verizon's attorney, reported to Judge Neel that "[t]here's a patent that's in dispute. . . . that Verizon and Beriont – will agree that they shall be joint owners of the patent." Def. Mot. To Dismiss - Dkt # 32 - Ex. 1 (Tr. at 4).

views of the posture of the case. At an initial pretrial conference, the court pointed out that the parties agreed that they had reached a settlement as to the following salient matters: (1) that GTE/Verizon would acknowledge in writing that the allegations of theft made against Beriont were false; (2) that GTE would pay Beriont $50,000 to permanently settle the defamation claim; (3) that prospective ownership of the '802 patent would be joint; and (4) that the state court actions would be dismissed and mutual releases from the state court claims would be entered. In other words, all that remains in dispute is whether Beriont had also agreed that he would not seek to be reinstated by Verizon (an issue that the parties agree is now moot) and whether Beriont had agreed to accept $40,000 for a release of all other patent-related claims. It is not in the interest of the parties or the court to expend further resources on this decade and a half dispute when a resolution can be achieved by a declaration of the parties' rights based on the terms of the settlement that are not in dispute and the positions the partes have taken before this court in articulating their respective interpretations of their rights and obligations.

ORDER

It is therefore ADJUDGED and DECLARED that: (1) as of June 13, 2005, the '802 patent is declared to be the joint and several property of Verizon as the successor to GTE Labs and Beriont as the inventor, each to exploit as it or he sees fit without

regard to the ownership of the other; (2) Verizon will pay Beriont $50,000 in settlement of the defamation claim; (3) Verizon will provide an unqualified written acknowledgment to Beriont that there is no evidence that the allegations of theft made against him are true and that Verizon has in fact determined them to be false; and (4) the parties will execute releases mutually absolving the other(s) of all claims in the state court litigation.  The court further DECLARES that, as a matter of law, the parties' joint and several ownership of the '802 patent absolves each and the other of any liability for uses (or non-uses) made of the patent from June 13, 2005, until such time as the patent shall expire.  It is further DECLARED that prior to June 13, 2005, because Beriont made the invention of the '802 patent in the course of his employment at GTE/Verizon, GTE/Verizon has (at the least) non-exclusive "shop rights" to use the '802 patent and is not liable for any infringement thereof.  *See McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1581-1582 (Fed. Cir. 1993).  The Clerk will enter judgment as provided in this DECLARATION and close the case with the parties bearing their own costs.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE