UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 00-11145-RGS

WALTER J. BERIONT

v.

GTE LABORATORIES, INC.,
GTE SERVICE CORPORATION,
GTE COMMUNICATIONS CORPORATION,
and ALFRED H. BELLOWS

MEMORANDUM AND ORDER
(ON REMAND) ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

February 14, 2014

STEARNS, D.J.

Plaintiff Walter J. Beriont began employment as an engineer with GTE Products Corporation in 1983.[1] In 1988, Beriont transferred to GTE Laboratories, Inc. (GTE Labs). In February of 1996, Beriont envisaged an

---

[1] The employment application that Beriont completed and signed in March 1983 notified him that he would be required, as a condition of his employment, to sign an agreement that stated: "I will assign and do hereby assign and convey to GTE . . . my entire right, title and interest in and to" all ideas and inventions "made or conceived by me, either solely or jointly with others, from the time of entering the employ of GTE until I leave," that are "along the line of the business and investigations of GTE, or resulting from or suggested by any work which I may do for GTE," as well as "all patent applications and patents thereon." Beriont executed an agreement containing these terms titled "Assignment Agreement" on June 13, 1983. *See* Def.'s Ex. B.

invention to improve low frequency power distribution within a cable television network. Beriont disclosed the invention and its embodiment to defendant Alfred Bellows, a co-worker, in the summer of 1996. In August of 1996, Beriont and Bellows reported the invention to defendant GTE Service Corporation (GTE Service).

GTE Labs terminated Beriont in March of 1997. Thereafter, Beriont amended a defamation lawsuit he had instituted against another co-worker to include claims against GTE Labs for breach of contract, wrongful termination, and promissory estoppel. The litigation notwithstanding, on June 11, 1998, with the assistance of Floyd Anderson, a patent attorney engaged by GTE Service, Beriont and Bellows jointly filed U.S. Patent Application No. 09/095,111 as co-inventors.[2] Beriont claims that on August 5, 1998, GTE Service asked Beriont to sell and assign his invention to GTE Labs, and to give a power of attorney to GTE Service. According to Beriont, after Anderson assured him that the GTE attorneys "were obligated to represent the inventors and therefore [he] would not need another lawyer," he acquiesced and executed the assignment.

---

[2] Beriont alleges that at no time during the preparation and prosecution of the patent application did GTE Service discuss with him ownership rights in the invention.

On February 19, 1999, attorney Leonard Suchyta filed an assignment application with the PTO on GTE Labs' behalf. On July 6, 1999, the PTO granted Application No. 09/095,111, and issued U.S. Patent No. 05,920,802 (the '802 patent) with Beriont and Bellows named as co-inventors, and with GTE Labs named as the assignee. On November 3, 1999, and again on March 6, 2000, Beriont wrote to GTE Service raising questions about the patent and the assignment. He did not receive a response. On May 3, 2000, Beriont notified GTE Service that he was rescinding the August 1998 power of attorney.

Beriont filed this action on June 13, 2000, seeking a declaratory judgment that he is the sole inventor of the '802 patent; to correct the patent's registration to remove Bellows as the co-inventor and GTE Labs as the assignee; for breach of fiduciary duty against GTE Service; and for patent infringement against GTE Labs and GTE Communications Corp. After Beriont made service on defendants in this case, the parties asked the court (then Judge Lasker), to stay the federal litigation in light of the ongoing attempts to memorialize a settlement in the two pending state cases.[3] Judge Lasker issued

---

[3] In September of 1996, Beriont filed the previously described defamation case *(Beriont v. Reichlen*, Middlesex Superior Court, CV-1996-5472). Beriont, after losing his job, added claims against GTE Labs in December of 1997. The second lawsuit, a declaratory judgment action, was filed by GTE Labs against Beriont in June of 1999. On June 13, 2005, the day trial was to begin in the defamation case, the parties reported it "settled." A dismissal nisi was entered

the requested stay on September 7, 2000. On February 1, 2007, Beriont asked the court to lift the stay and permit him to litigate the federal claims. Judge Lasker denied the motion, ruling that "in view of the apparent dispute between the parties as to the settlement in or not of the State Court action makes it inappropriate to lift the stay in this Court." Feb. 20, 2007 Order. The case was transferred to this session on April 6, 2010, and on August 25, 2010, the court issued an Order to Show Cause as to whether the stay should be kept in place. The court continued the stay until July 14, 2011, when it issued a dispositive motion schedule.

On September 7, 2011, defendants moved to dismiss Beriont's Complaint with prejudice contending that the underlying issues had been settled before Judge Neel in the Superior Court in 2005. Defendants claimed that the settlement included, among other things, an agreement by Beriont to dismiss this action. In support of the motion, defendants submitted a transcript of the

---

by Justice Neel in the defamation case the same day, as well as in the GTE Labs declaratory judgment case two days later, on June 15, 2005. The Superior Court allowed the parties' jointly-filed motion to extend the time of entry of the dismissals nisi until August 15, 2005. On the appointed day, Beriont filed an emergency motion to vacate the dismissals as the formal settlement agreement had yet to be executed. On February 6, 2006, Justice Neel entered a final judgment directing the parties to *Correia v. DeSimone*, 34 Mass. App. Ct. 601 (1993), should either side seek specific performance of the settlement terms. The parties, however, never executed a formal settlement agreement.

parties' lobby conference with Judge Neel. Defendants also attached the Superior Court dockets for both cases; an unsigned draft of the settlement agreement; draft releases prepared for each of the parties; and the unexecuted stipulations of dismissal.

In response, Beriont argued that he had agreed only to GTE Labs' (now known as Verizon Laboratories) proposal to settle the Reichlen defamation case on condition that GTE Labs acknowledge in writing that the allegations made against him were false, that GTE Labs pay him $50,000, and that the terms of the settlement agreement be kept confidential. In return, Beriont agreed to dismiss his lawsuit against GTE Labs and Reichlen, and to enter into an agreement of joint ownership of the '802 patent,[4] although "he ha[d] not given up his right to hold all defendants accountable for taking his patent rights from him." Pl.'s Opp'n Mem. at 5. Beriont argued that Judge Lasker's refusal to lift the stay had led him to believe that the federal court would not entertain his patent claims until the state court proceedings had fully terminated.

On October 21, 2011, this court denied the motion to dismiss, finding

---

[4] Arthur Telegen, Verizon's attorney, reported to Judge Neel that "[t]here's a patent that's in dispute. . . . that Verizon and Beriont – will agree that they shall be joint owners of the patent." Def. Mot. to Dismiss - Dkt # 32 - Ex. 1 (Tr. at 4).

that defendants had not met their burden of proving the existence of a "global settlement agreement." *See* Oct. 21, 2011 Order.  In denying a renewed motion by defendants for summary judgment, filed on November 18, 2011, the court held that "a dispute of fact remains as to whether an enforceable settlement agreement between the parties exists that includes retroactive assignment to GTE of Beriont's rights in the Jumper ['802] patent." *See* Feb. 1, 2012 Order. Accordingly, the court set that limited issue for trial.

In preparation for trial, the parties filed affidavits setting out their views of the case.  At an initial pretrial conference, the court pointed out that the parties agreed that they had reached a settlement as to the following salient matters: (1) that GTE/Verizon would acknowledge in writing that the allegations of theft made against Beriont were false; (2) that GTE would pay Beriont $50,000 to permanently settle the defamation claim; (3) that prospective ownership of the '802 patent would be joint; and (4) that the state court actions would be dismissed and mutual releases from the state court claims would be entered.  "In other words, all that remains in dispute is whether Beriont had also agreed that he would not seek to be reinstated by Verizon (an issue that the parties agree is now moot) and whether Beriont had agreed to accept $40,000 for a release of all other patent-related claims." *Beriont v. GTE Labs, Inc.*, 2012 WL 2449907, at *3 (D. Mass. June 27, 2012).

Finding that it was not in the interest of the parties or the court to expend further resources on this decade and a half-long dispute, the court ruled that as of June 13, 2005, the '802 patent was jointly and severally owned by Verizon as the successor to GTE Labs and by Beriont as the co-inventor, each to exploit as it or he sees fit.[5]  *Id.*  The court also declared, as a matter of law, that the parties' joint and several ownership of the '802 patent absolved each and the other of any liability for uses (or non-uses) made of the patent from June 13, 2005, until such time as the patent expires, and that prior to June 13, 2005, GTE/Verizon had non-exclusive "shop rights" to the '802 patent and therefore had no liability for any pre-2005 infringement.  *Id.*, citing *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1581-1582 (Fed. Cir. 1993).

    Beriont appealed this court's order to the Federal Circuit asserting that it erred in absolving GTE of infringement liability for the period after the 2005 settlement agreement. The Federal Circuit agreed with this court that, as of June 13, 2005, Beriont retained no right to charge GTE with

---

[5] The court also ordered Verizon to pay over to Beriont the $50,000 in settlement of the defamation claim and to provide an unqualified written acknowledgment to Beriont that there is no evidence that the defamatory allegations made against him are true. The court also ordered the parties to exchange mutual releases.

infringement. *Beriont v. GTE Labs, Inc.*, 535 Fed. App'x 919, 923 (2013). However, the Federal Circuit vacated the judgment of non-infringement for the period preceding June 13, 2005, and remanded the case to this court to address GTE's pre-June 2005 activities that fell outside the scope of shop rights (noting that the parties had provided it with no briefing regarding the application of the shop rights doctrine). *Id.* at 924.

The Federal Circuit then directed this court's attention to GTE's assertion that the joint ownership agreement covered the life of the patent and all uses of the patented invention. It also noted that neither party had discussed the implications of two possibly dispositive documents. First, the Court pointed to a June 13, 1983 Assignment Agreement (R. App. at A105) in which Beriont

> agreed to "assign and convey to the [GTE Products] Corporation [his] entire right, title, and interest in and to all . . . ideas, concepts, inventions, processes, and improvements and all patent applications and patents thereon." The Assignment Agreement goes on to state that Beriont "understand[s] the expression 'Corporation' as used in this agreement includes not only GTE Products Corporation but also its successors or any company controlled by it."

*Id.* at 925.[6] It also located an unspecified assignment by Beriont that had been

---

[6] Judge Lourie filed a partially dissenting opinion finding that the Assignment Agreement provided an alternative ground to justify this court's judgment. However, the majority held that because the parties did not address

recorded on February 25, 2002, in the USPTO Patent Assignment Abstract of Title database. After further briefing, this court heard oral argument on the issues identified by the Federal Circuit on February 13, 2014.

GTE asserts that Beriont cannot overcome the facts that he was listed as a co-inventor with Bellows on the '802 patent, and that Bellows unequivocally assigned his rights in the '802 patent to GTE in 1998. In support, GTE points to the patent, the provisional patent application (which consists of several internal memoranda authored by Bellows), the inventorship declaration (which Beriont signed as the *second joint inventor, see* Def.'s Ex. D), and Beriont's deposition testimony. As alternative bases for summary disposition, GTE contends that its 2005 settlement agreement with Beriont was for joint ownership over the entire life of the patent. It also points to the 1983 Assignment Agreement identified by the Federal Circuit.

For his part, Beriont continues to claim sole ownership of the '802 patent. Moreover, he asserts that Bellows' assignment to GTE was "incomplete" as the document "shows that Bellows intended his patent rights, if he had any, to be sold and assigned in a joint agreement with Beriont and [sic] not a unilateral action." Pl.'s Reply Br. at 2. Beriont also repeats his

---

the Agreement, it had "no idea whether the Assignment Agreement is valid." *Id*.

9

earlier argument that the state court settlement agreement was limited to resolving the state court litigation. Finally, Beriont complains that he has been "unable to obtain discovery from GTE" which would support his allegation that he was the sole inventor of the '802 patent and that, despite his directions, GTE Service Corp. "fraudulently assigned his rights in the patent."[7] *Id.* at 3-4.

## DISCUSSION

Section 116 of Title 35 of the United States Code provides that "[w]hen an invention is made by two or more persons jointly, they shall apply for patent jointly." "The inventors as named in an issued patent are presumed to be correct. Thus, a party alleging non joinder must meet the heavy burden of proving its case by clear and convincing evidence." *Nartron Corp. v. Schukra*

---

[7] In his Reply brief, Beriont claims that to "correct the inventorship of the '802 patent" he requires "the original patent documents filed on February 19, 1999"; Bellows' "employee evaluations"; "technical and trip reports" generated by Bellows during his employment for GTE Labs; and Bellows' testimony regarding the claims of the '802 patent. Pl.'s Reply Br. at 9. It is unclear whether GTE has previously made these documents available to Beriont. *See* Def.'s Reply at 4 ("Moreover Mr. Beriont has not identified any relevant documents that are not already available to him."). Nonetheless, the original patent application documents are public records, and are equally available to Beriont. Even putting aside Bellows' privacy interests in his employment records, the belated request for his personnel file appears for all practical purposes irrelevant to the issue of patent ownership. Similarly, as to Bellows' testimony, Beriont has had fourteen years to take his deposition, but for whatever reason has declined to do so.

*U.S.A., Inc.*, 558 F.3d 1352, 1356 (Fed. Cir. 2009) (citations omitted).  For present purposes, Beriont bears the burden of demonstrating, by clear and convincing evidence, that Bellows is not a co-inventor on the '802 patent. *See Thompson v. Haynes*, 305 F.3d 1369, 1384 (Fed. Cir. 2002) ("There is a presumption that the inventors named on an issued patent are correct, so misjoinder of inventors must be proven by clear and convincing evidence."); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004) (same).  All evidence, even Beriont's own testimony, establishes the contrary. In his deposition testimony, Beriont described his collaboration with Bellows on the invention which is the basis for the '802 patent – how he "showed" Bellows how to improve power distribution in a video system and "reduce the number of components" by placing a jumper inside the amplifier."   Beriont Dep. at 80-81.  Beriont testified that this discussion happened during his "normal work day" at GTE, *id*. at 78, and that immediately afterwards, Bellows built a prototype of the invention at home in his garage. *Id*. at 82.  *See Ethicon*, 135 F.3d at 1460 (each co-inventor needs to perform "only a part of the task which produces the invention"); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("[A] joint invention is simply the product of a collaboration between two or more persons working together to solve the problem addressed."); *see also* 35 U.S.C. § 116(a)(2) (joint inventors need not "make

the same type or amount of contribution" to an invention).

Once a patent is granted each co-inventor acquires the right to practice the invention to its full extent without seeking permission from or paying royalties to the other. *See* 35 U.S.C. § 262 ("In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States, or import the patented invention into the United States, without the consent of and without accounting to the other owners."). Similarly, a co-owner can exploit his or her full rights under the patent, including assigning those rights, without seeking the consent of other co-owners. *See Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1268 (Fed. Cir. 2007) (inventor named on the face of the patent was the presumptive co-owner, and inventor's assignment of co-ownership interest made his assignee a proper co-owner); *see also Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) ("Each co-owner's ownership rights carry with them the right to license others, a right that also does not require the consent of any other co-owner."); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (co-owners may "freely license others to exploit the patent without the consent of other co-owners"). It is undisputed that Bellows assigned his own interest in the patent to GTE in 1998, and thus, GTE has at all times been a joint owner

of that patent. Accordingly, GTE cannot be liable for infringement.[8]

## ORDER

For the foregoing reasons, GTE's motion for summary judgment on the remaining issues in this case – GTE's alleged infringement prior to June of 2005, and the dispute over inventorship of the '802 patent – is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[8] GTE also argues that the settlement agreement between Beriont and the GTE defendants in 2005, also made GTE a joint owner of the '802 patent for all time — meaning that, as a matter of law, GTE cannot have infringed the patent prior to 2005. As Beriont has failed to establish by clear and convincing evidence that he was the sole inventor of the '802 patent, the court need not decide the retroactivity of the agreement.